IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH GREENAWALT, )
)
    Plaintiff, )
)
v. ) Civil Action No. 09-1489
)
CLARION COUNTY, )
)
    Defendant. )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.     April 26, 2011

    This is an action in employment discrimination. Plaintiff, Joseph Greenawalt ("Greenawalt"), alleges that his former employer, Clarion County, discriminated against him by firing him due to his age of 58 and his male gender in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq. Greenawalt seeks back pay and front pay, compensatory damages for pain, suffering, and humiliation, punitive damages, and attorney's fees.

    Before the court is Clarion County's motion for summary judgment. [Doc. No. 23]. Clarion County contends that Greenawalt cannot state a prima facie case of age or gender discrimination and, even if he could, that he cannot rebut

Clarion County's legitimate, non-discriminatory reason, for his termination.

For the reasons set forth below, we will grant Clarion County's motion for summary judgment.

I. FACTUAL BACKGROUND

All material facts discussed herein are undisputed unless otherwise indicated. We construe all facts in favor of Greenawalt, the non-moving party. Additional material facts may be discussed elsewhere in this memorandum, in context.

Joseph Greenawalt was employed at the county jail in Clarion County, Pennsylvania from November, 2001 until August 7, 2008. Greenawalt was hired as a part-time corrections officer by Clarion County at the age of 51, and became a full-time corrections officer at the jail around the time of his 52nd birthday.

Clarion County jail had established policies and procedures, including Administrative Policy A-106, which restricted the nature of relationships between correctional officers and inmates. Policy A-106 was in effect throughout Greenawalt's employment at Clarion County jail. Specifically, Policy A-106 prohibited gifts of money to inmates.

2

Inmate Kelly Zacharias ("Zacharias") and Greenawalt met when Zacharias was incarcerated at the Clarion County jail. In December, 2007, Zacharias began to tell Greenawalt about her lack of money. Greenawalt then began giving Zacharias approximately $20.00 per week. Greenawalt mailed the money to Zacharias under an alias to hide his identity. At times while discharging his duties at the jail, Greenawalt would be responsible for recording the receipt of money and would log the money he sent to Zacharias under his alias. Accordingly, Greenawalt knew that all inmate mail would be checked for contraband, and that a log was kept of all monies received by inmates, which included the sender's name.

Greenawalt concedes that he was violating Clarion County's jail policy when he gave Zacharias money, and he was aware of the risks involved when a corrections officer does so.

Jeffrey Hornberger was the Warden at Clarion County jail, and Shannon Dugan was the Deputy Warden. Deputy Warden Dugan learned from other corrections officers at the Clarion County jail that Greenawalt may have been giving money to Zacharias. Deputy Warden Dugan's investigation into the matter involved reviewing Zacharias' financial records, interviewing several corrections officers, and interviewing Greenawalt. Deputy Warden Dugan discovered that approximately $600.00 to

$700.00 had been deposited into Zacharias' prison account by a "JC White". It is undisputed that this was Greenawalt's alias. Deputy Warden Dugan talked to Warden Hornberger about disciplinary measures for Greenawalt's actions and Deputy Warden Dugan recommended that Greenawalt be immediately fired.

On July 30, 2008, Greenawalt was called into a meeting with Warden Hornberger, Deputy Warden Dugan, and Union Representative and Officer in Charge, Micki Fink. At the meeting, Greenawalt admitted to his actions. Greenawalt was suspended with pay until the "Loudermill" hearing was held and the Clarion County Commissioners took further action.

In due course, Greenawalt was discharged. Greenawalt subsequently filed this lawsuit contending that he was discharged due to his age and gender.

II. LEGAL STANDARD

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

"[T]he mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

The United States Supreme Court has "emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and requires entry of summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In other

5

words, in defending against summary judgment, a party cannot simply re-assert the facts alleged in the complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotations omitted).

### III. DISCUSSION

Clarion County has moved for summary judgment on the ground that Greenawalt has failed to establish a prima facie case for age or gender discrimination.

Among other things, Clarion County contends that Greenawalt cannot produce evidence that would give rise to an inference of discrimination. Specifically, Clarion County contends that Greenawalt cannot show that he was treated differently than similarly situated individuals that were not members of a protected class.

Clarion County further asserts that even if Greenawalt had established a prima facie case of age or gender discrimination, they have met their burden of demonstrating a legitimate, non-discriminatory, reason for Greenawalt's termination. Specifically, Clarion County argues that Greenawalt admitted to violating a jail policy that he knew

6

could result in his termination. Clarion County argues that Greenawalt has offered no evidence that shows the reason for his termination was mere pretext or motivated by illegal discrimination based upon age or gender.

Greenawalt responds that he has clearly established a prima facie case for both age and gender discrimination because he is a member of both protected classes as a male over the age of 40. Greenawalt contends that he was qualified for his job because he had worked for Clarion County for approximately 8 years with no prior issues. Greenawalt asserts that his termination was an adverse job action, and that he was treated less favorably than younger, mainly female, employees.

A. Prima Facie Case

Title VII provides that "it shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2.

The ADEA similarly provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions,

7

or privileges of employment because of such individual's age[.]" 29 U.S.C. § 623(a).

The prima facie analysis for an ADEA discrimination claim mirrors that for a Title VII discrimination claim, with the only difference being that a claimant under the ADEA must be over forty years of age. Sarullo v. United States Postal Service, 352 F.3d 789, 797 n. 6 (3d Cir. 2003); Lee v. City of Philadelphia, No. 08-862, 2008 WL 2697320, at * 2 (E.D. Pa. July 3, 2008).

Here, there is no direct evidence of discrimination; therefore, the familiar burden-shifting framework of McDonnell Douglas must be used. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009) (holding that the United States Supreme Court's decision in Gross v. FBL Financial Services, 129 S.Ct. 2343 (2009), does not forbid applying McDonnell Douglas to age discrimination claims). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997) (citations omitted).

In order to prove a prima facie case of discrimination under Title VII and the ADEA[1], Greenawalt must establish: (1) that he is a member of a protected class; (2) that he performed his job in a satisfactory manner; (3) that he suffered an adverse employment action; and (4) that circumstances exist that give rise to an inference of unlawful discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999); Sarullo, 352 F.3d at 797; City of Allentown, 589 F.3d at 689. "[T]he *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." Sarullo, 352 F.3d at 797-798 (citing Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996)).

To satisfy the fourth prong of the prima facie test, Greenawalt must show that he was treated differently than other similarly situated employees under circumstances that raise an inference of unlawful discrimination. Id. at 798 n.7. To be similarly situated, other corrections officers Greenawalt refers

---

[1] The analysis required for adjudicating Greenawalt's Title VII claim mirrors the analysis of Greenawalt's PHRA claim; therefore, the court will consider those two claims together. See Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000) (stating that because the analysis required for adjudicating a PHRA claim is identical to a Title VII inquiry "we therefore do not need to separately address" the PHRA claim). Furthermore, ADEA and PHRA age discrimination claims may be addressed collectively. Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010).

to as comparators "must have dealt with the same supervisor, have been subject to the same standards of employment and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." Hughes v. City of Bethlehem, No. 08-5444, 2007 WL 954120, at *4 (E.D. Pa. Mar. 27, 2007) (citations omitted).

With respect to the fourth prong of the prima facie test, Greenawalt has not shown that he was treated differently than similarly situated corrections officers. None of the examples Greenawalt cites include behavior similar to what he admittedly did: covertly deposited money into a current inmate's account. We have carefully reviewed each of Greenawalt's asserted comparators and have found that all of Greenawalt's examples deal with corrections officers who developed social relationships with inmates after the inmates left Clarion County jail.

Greenawalt attempts to draw a closer comparison between himself and correctional officer Ms. Mangiantini because Mr. Fink complained that she was behaving inappropriately with inmates, was warned for being too friendly with inmates, and was put under investigation by Warden Hornberger. Warden Hornberger's investigation did not reveal any evidence that Ms.

Mangiantini had entered into a relationship with a current inmate. [Doc. No. 29-14, pg. 20; Doc. No. 29-15, pgs. 2-6].

Greenawalt has not shown that he and Ms. Mangiantini engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." Hughes, 2007 WL 954120, at *4. Ms. Mangiantini did not covertly deposit money into a current inmate's account at the Clarion County jail. Ms. Mangiantini's violation of Policy A-106 involved her developing a romantic relationship and eventually marrying an inmate after he was released. The circumstances surrounding Ms. Mangiantini's and Greenawalt's violation of Policy A-106 are distinguishable such that it was reasonable for Clarion County to treat their offenses differently.

The court concludes that Greenawalt has failed to prove his prima facie case of age or gender discrimination. The undisputed evidence before the court is that Greenawalt admittedly engaged in behavior warranting his dismissal. Greenawalt has referred us to no other employee that engaged in similar conduct with a current inmate. Nor has Greenawalt established that he was treated differently than, or was replaced by, a female or any significantly younger employee to raise an inference of discrimination.

### B. Clarion County's Legitimate Non-Discriminatory Reason

Assuming arguendo that Greenawalt had established a prima facie case of age or gender discrimination, Clarion County has articulated a legitimate, non-discriminatory, reason for its employment decision: Greenawalt provided money to inmate Zacharias' prison account using covert measures to hide his activity knowing full well the risk involved with doing so. The Clarion County Commissioners, who were the ultimate decision makers regarding Greenawalt's discipline, all stated that they found the covert payments of money to an inmate to be an egregious offense worthy of termination. [Doc. No. 29-33, pgs. 15-17; Doc. No. 29-27, pgs. 9-10; Doc. No. 29-30, pg. 2].

Thus, Greenawalt may avoid summary judgment by presenting evidence that Clarion County's articulated non-discriminatory reason for his termination was merely pretext for unlawful discrimination.

### C. Pretext

The Court of Appeals for the Third Circuit has described standards in which a plaintiff can prove pretext in Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358 (3d Cir. 2008):

> In order to show pretext, a plaintiff must submit evidence which (1) casts doubt upon

> the legitimate reason proffered by the
> employer such that a fact-finder could
> reasonably conclude that the reason was a
> fabrication; or (2) would allow the fact-
> finder to infer that discrimination was more
> likely than not a motivating or
> determinative cause of the employee's
> termination. See Fuentes v. Perskie, 32
> F.3d 759, 764 (3d Cir. 1994); Chauhan v. M.
> Alfieri Co., Inc., 897 F.2d 123, 128 (3d
> Cir. 1990). Put another way, to avoid
> summary judgment, the plaintiff's evidence
> rebutting the employer's proffered
> legitimate reasons must allow a fact-finder
> reasonably to infer that each of the
> employer's proffered non-discriminatory
> reasons was either a post hoc fabrication or
> otherwise did not actually motivate the
> employment action (that is, that the
> proffered reason is a pretext).

Id. at 370 (citations omitted).

Greenawalt does not deny that he gave money to an inmate and attempted to cover up his activities. He also does not deny that in so doing, he knew that he was in violation of Clarion County jail policy. Instead Greenawalt argues that he was disciplined and ultimately fired while younger female [and one male] corrections officers violated the same policy, but were not similarly disciplined.

The court concludes that this evidence is insufficient to prove pretext. Greenawalt has not cast doubt upon Clarion County's legitimate, non-discriminatory, reason for his termination. As already discussed, there is no evidence that

other corrections officers engaged in similar conduct with inmates while they were incarcerated. Warden Hornberger and the Clarion County Commissioners' determination that Greenawalt committed a sufficiently egregious offense worthy of termination was such that a fact-finder could not reasonably infer that Greenawalt's termination was a post hoc fabrication, or that Greenawalt's age or gender motivated their decision.

We have carefully considered the other arguments made by Greenawalt including mixed motive and subordinate bias and find that they are either contrary to the undisputed facts in this case, contrary to established law, or are otherwise without merit.

IV. Conclusion

In conclusion, the court finds that Greenawalt has presented no evidence that Clarion County's true motivation for firing him was based on either his age or his gender. Clarion County's motion for summary judgment will be granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH GREENAWALT,           )
                             )
        Plaintiff,            )
                             )
    v.                       )   Civil Action No. 09-1489
                             )
CLARION COUNTY,              )
                             )
        Defendant.           )

ORDER

AND NOW, this 26th day of April, 2011, it is HEREBY ORDERED that Clarion County's motion for summary judgment [Doc. No. 23] is GRANTED.

The Clerk of Court is directed to mark this case CLOSED.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record